UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| MICHAEL YANDAL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:15-CV-102-DLB-HAI |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Michael Yandal is an inmate confined at the Federal Correctional Institution located in Manchester, Kentucky ("FCI Manchester").  On June 12, 2015, Plaintiff, proceeding pro se, filed a complaint alleging negligence related to an alleged injury to his eyes pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346.  D.E. 1.  Plaintiff was granted leave to file his amended complaint (D.E. 20) on November 13, 2015.  D.E. 19.  The United States has filed a motion to dismiss, or in the alternative, for summary judgment.  D.E. 13.  Plaintiff filed a response to the United States' motion (D.E. 15), a motion to sever (D.E. 16), and a cross-motion for summary judgment (D.E. 17).  The pending motions were referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  D.E. 28.  The motions are ripe for decision.

## I.  FACTUAL BACKGROUND

The majority of the factual basis is not disputed by the parties.  According to Plaintiff's medical records, on February 5, 2015, Plaintiff was examined by Optometrist Phillip Robinson.  D.E. 14-2 at 5.  Plaintiff presented complaining that it "feels like [a] needle in my left eye," and that he was experiencing blurred vison and eye watering.  *Id.*  Plaintiff reported that this

condition had been occurring for three days. *Id.* Robinson diagnosed Plaintiff with punctate keratitis, and prescribed prednisolone acetate ophthalmic suspension and gentamicin ophthalmic solution. *Id.* at 6. Plaintiff was directed to use each in the left eye only, four times a day for a period of five days. *Id.* A follow-up appointment in one week was scheduled. *Id.*

On February 10, 2015, Plaintiff returned complaining of "irritation" and "eyelid swelling" after using the drops that were prescribed on February 5. *Id.* at 9. Plaintiff indicated that he had been using the gentamicin in both eyes. *Id.* Robinson noted "raw and irritated" skin with edema in both eyes. *Id.* at 10. He diagnosed Plaintiff with an allergic reaction to the gentamicin, and instructed Plaintiff of this allergy. *Id.* Robinson prescribed erythromycin ophthalmic ointment, and instructed Plaintiff to use the prednisolone in both eyes. *Id.* Robinson noted that he "[w]ill see him back in 2 days and see how allergic reaction is clearing." *Id.*

Next, Plaintiff alleges that he returned to "sick call" the next day, February 11, 2015. D.E. 17 at 3. However, no record has been presented by either party of this alleged encounter. Plaintiff states he returned to sick call and requested that he be given "something for the reaction such as 'Benadryl'" and he was refused. *Id.* at 3. He alleges that Marguarite Carroll, the nurse he spoke to, told him to "try the Claritin, it has an anti-histamine in it." *Id.* Carroll submitted a declaration under the penalty of perjury. D.E. 14-4. She states that "[t]o the extent that Plaintiff reports or alleges that he presented to 'sick-call' on February 11, 2015, such an encounter could not have occurred. February 11, 2015, was a Wednesday, and there is no sick-call" at the camp on Wednesdays. *Id.* at 2. However, she states that "it is possible that Plaintiff approached me, or other medical staff, on February 11, 2015, during the morning pill distribution[.]" *Id.* This is consistent with Plaintiff's statements. *See* D.E. 17 at 3 (Plaintiff stating that inmates use "sick-call" and "pill-line" interchangeably). Carroll states that, if Plaintiff approached her during pill

2

distribution as alleged, he likely "would have been directed to attend sick-call the following day[.]" D.E. 14-4 at 2.

In the records and statements provided, the next documented interaction between Plaintiff and the medical staff occurred on March 11, 2015, during which he was evaluated by Carroll. *See* D.E. 14-2 at 13.  According to her declaration, during the March 11 evaluation Plaintiff "denied having any eye pain, itching, swelling or discharge[.]"  D.E 14-4 at 2.  She states that "upon examination, I noted that there was no redness, swelling, discharge, rash or discoloration in either eye."  *Id.* at 3.

Finally, on April 20, 2015, Plaintiff was evaluated by Della Thomas, A.P.R.N.  D.E. 14-2 at 17.  Thomas, under penalty of perjury, also submitted a declaration.  D.E. 14-2.  Thomas states that, during this evaluation, "Plaintiff specifically denied any issues with his eyes."  *Id.* at 3. Moreover, the medical record from that date indicates that "[i]nmate reports feeling well."  *Id.* at 17.  Further, Thomas affirms that the April 20 evaluation was Plaintiff's "most recent encounter with medical services."  *Id.* at 3.

Plaintiff states that, after "realizing that Robinson and Carrol [sic] both neglected to provide [him] the appropriate treatment for his allergic response twice, [he] filed his Tort claim on 2/17/2015, due to the damage done to the skin under and around his eyes and his still blurred vision."  D.E. 17 at 4.  He states that, on March 11, 2015, he was "unexpectedly called" to be examined by Carroll.  *Id.*  He alleges that, during the March 11 examination, Carroll "only administered the eye exam, she did not exam [his] eyelids or eyes, nor did she examine [his] skin condition around his eyes."  *Id.*  He asserts that Carroll did not listen to his complaints regarding his symptoms and was "only interested in completing the vision exam."  *Id.*

3

Plaintiff states that his claim was denied on March 31, 2015 and that "this denial was based upon the false narrative put forth by Defendant Carrol [sic] alone." D.E. 20 at 4. Plaintiff alleges that "[a]s a direct and proximate result of the combined negligence of defendants' agent, servants, and employees, [he] has suffered the blurred vision and facial disfiguration and has, therefore, become, as a direct and proximate result, disabled and disfigured." *Id.* He alleges that he "has suffered pain of mind and body, permanent disability, and disfigurement" and that he will in the future incur medical expenses and "will suffer pain of mind and body, and will be permanently disabled and disfigured." *Id.* He requests an award of two million dollars including court costs and interest. *Id.* at 5.

The United States filed a motion to dismiss, or in the alternative, motion for summary judgment on October 13, 2015. D.E. 13. In support of its motion, Defendant asserts several arguments. First, Defendant argues that Plaintiff's case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), (6). Defendant initially argues that Plaintiff's complaint fails to state a claim upon which relief can be granted. Defendant further argues that dismissal is proper because Robinson was an independent contractor and not an employee of the United States, therefore the FTCA does not apply and the Court lacks subject matter jurisdiction. Finally, Defendant argues that it is entitled to summary judgment because Plaintiff has failed to meet his burden to establish a medical negligence claim. In support of its motion, Defendant has filed a memorandum of law (D.E. 14) and provided the declarations of Marguarite Carroll (D.E. 14-4), Tracy Fields (D.E. 14-3), Della Thomas (D.E. 14-2), and Joshua Billings (D.E. 14-1). Plaintiff filed a cross-motion for summary judgment alleging that the record establishes that he is entitled to judgement as a matter of law. D.E. 17. Additionally, Plaintiff has filed a motion to sever Robinson as a party from the action. D.E. 16.

## II.  DISCUSSION

*A. Subject Matter Jurisdiction under the FTCA*

Under traditional principles of sovereign immunity, the United States, as a sovereign, is immune from suit except to the extent that it has waived its immunity.  In 1946, Congress adopted the FTCA which, subject to numerous exceptions, waives the sovereign immunity of the federal government and confers subject matter jurisdiction on the federal district courts to hear tort actions against the federal government for the negligence of its employees.  In relevant part, the FTCA authorizes suits against the government to recover damages:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The FTCA thereby constitutes the United States' limited waiver of sovereign immunity, restricted only to circumstances in which "a private individual [would be liable] under like circumstances," 28 U.S.C. § 2674.  It provides the exclusive remedy for tort actions against the federal government, its agencies and employees.  *Ascot Dinner Theatre, Ltd.*, *v. Small Business Admin.*, 887 F.2d 1024, 1028 (10th Cir. 1989).  In giving consent to suit in particular circumstances, the FTCA defines the scope of district court jurisdiction to entertain FTCA suits. 28 U.S.C. § 1346(b).

The Supreme Court of the United States has held that the FTCA is applicable to claims made by federal inmates alleging personal injuries sustained while incarcerated because of the negligence of government employees.  *United States v. Muniz*, 374 U.S. 150, 150 (1963).  "[T]he duty of care owed by the Bureau of Prsions to federal prisoners is fixed by 18 U.S.C. § 4042,

5

independent of an inconsistent state rule." *Id.* at 164-65.  The statutes provides, in pertinent part, that:

> The Bureau of Prisons, under the direction of the Attorney General, shall--
> ....
>   (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise.

18 U.S.C. § 4042(a)(2).  "As a general rule, domestic liability on the part of the federal government under the Federal Tort Claims Act is determined in accordance with the law of the state where the event giving rise to liability occurred." *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995).  Therefore, the law of Kentucky must be applied in this case.

## B.  Defendant's Rule 12(b)(1) Motion to Dismiss and the Federal Contractor Exception

Defendant seeks dismissal because the allegedly negligent actions were performed by an independent contractor and not an employee of the federal government.  D.E. 14 at 17.  According to Defendant, it can only be held liable for the negligent actions of employees of the government.  *Id.*  It asserts that Robinson was employed by a company called Seven Corners, which had an agreement to provide "comprehensive medical services" to FCI Manchester.  *Id.* at 26.  Thus, Defendant argues, "Plaintiff's claims related to the alleged lack of treatment for his allergic reaction to prescription medication at FCI Manchester by Dr. Robinson fall within the contractor exclusion to the FTCA." *Id.*  Notably, Defendant does not assert that Carroll was not an employee of the United States, and in her declaration, Carroll admits that she is "employed as a Nurse for the Federal Bureau of Prisons[.]."  D.E. 14-4 at 1.

As noted, the FTCA provides "a limited wavier of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813 (1976).  "'Employee of the government' includes 'officers or employees of any federal

agency,' and 'federal agency' expressly 'does not include any contractor with the United States.'" *Berrien v. United States*, 711 F.3d 654, 659 (6th Cir. 2013) (quoting 28 U.S.C. § 2671). "Because independent contractors are not considered agents or employees of the United States, an independent contractor cannot be held liable under the FTCA." *Zion v. United States*, 913 F. Supp. 2d 379, 383 (W.D. Ky. 2012).  Thus, in cases in which the alleged tortfeasor is an independent contractor, federal courts lack subject matter jurisdiction under the FTCA and should dismiss the claim. *Moser v. United States*, No. 1:02-CV-302, 2006 WL 1476202, *6-7 (S.D. Ohio May 25, 2006); *see also Berrien*, 711 F.3d at 657 (upholding dismissal of a plaintiff's claims against an independent contractor).

"A critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" *Orleans*, 425 U.S. at 814 (quoting *Logue v. United States*, 412 U.S. 521, 528 (1973)).  The court in *Zion* found that "the real test is control over the primary activity contracted for and not the peripheral, administrative acts relating to such activity." *Zion*, 913 F. Supp. 2d at 384 (quoting *Wood v. Standard Prods. Co., Inc.*, 671 F.2d 825, 832 (4th Cir. 1982)).  Although courts may consider additional factors in determining if an actor is an independent contractor, "a number of courts…have found the 'control' factor decisive where the United States' power to direct or supervise a physician's medical care…is expressly limited by the terms of an agreement (or agreements) between that physician and the facility." *Moser*, 2006 WL 1476202, *6 (citing *Broussard v. United States*, 989 F.2d 171, 175 (5th Cir. 1993); *Lurch v. United States*, 719 F.2d 333, 337-38 (10th Cir. 1983)). Thus, "an important source of evidence as to the dynamics of a contractual relationship between two entities is the contract itself." *Zion*, 913 F. Supp 2d at 384 (citing *Fraser v. United States*, 490 F. Supp. 2d 302, 310 (E.D.N.Y. 2007)).

Plaintiff acknowledges that Robinson was an independent contractor.  D.E. 16 at 1.  He agrees with Defendant that "Robinson's actions fall under the Contractor Exception of the FTCA, which removes liability of the government for the torts of private contractors."  *Id.* at 1-2. With this concession, and based on the evidence in the record, it is clear that Robinson was not an employee of the United States for the purposes of the FTCA.

The contract that was entered into between the Bureau of Prisons and Seven Corners, Inc. provides for "comprehensive medical services."  D.E. 14-3 at 5.  In her declaration, Tracy Fields, the Supervisory Contract Specialist at FCI Manchester, states that the contract has a term of one year, and has been renewed annually to date.  *Id.* at 2.  The contract provides that Seven Corners shall supply outpatient institution services which include optometrist services.  *Id.* at 10-11.

First, the Court notes that the contract explicitly forms an independent contractor relationship.  The contract states that the parties understand it "is a nonpersonal services contract, as defined in Federal Acquisition Regulation (FAR) 37.101, under which the professional services rendered by the Contractor are rendered in its capacity as an independent contractor." *Id.* at 27-28.  This regulation provides, in relevant part, that: "[n]onpersonal services contract means a contract under which the personnel rendering the services are not subject, either by the contract's terms or by the manner of its administration, to the supervision and control usually prevailing in relationships between the Government and its employees."  48 C.F.R. § 37.101 (2015).  Clearly, the contract, as agreed to by the parties, contemplated that Seven Corners would provide services as an independent contractor, and, per the regulation, outside the control "usually prevailing" in an employer and employee relationship.

Further, Seven Corners has explicit control over medical care under the contract.  The contract provides that the United States has the right to inspect and evaluate Seven Corners's

compliance with a quality control plan.  D.E. 14-3 at 17.  It further states that the United States "may evaluate the quality of professional and administrative services provided, but retains no control over professional aspects of the services rendered[.]" *Id.* at 28.  For example, the United States has no control over Seven Corners's "professional medical judgment, diagnosis, or specific medical treatments." *Id.*  Thus, the contract vests all decisions and judgments regarding the medical services to be provided in the sole discretion of Seven Corners.  While the United States retains control over administrative tasks relating to the contract, Seven Corners maintains complete control over the primary activity.

Finally, the contract provides that Seven Corners "shall be solely liable for and expressly agrees to indemnify the Government with respect to any liability producing acts or omissions by it or by its employees or agents." *Id.*  Moreover, the contract requires Seven Corners to maintain an insurance policy throughout the duration of the contract.  *Id.*  This language and requirement for insurance evidences an independent contractor relationship.  The parties designed the contract so that all decisions regarding medical services are within the discretion of Seven Corners, and thus the liability for those decisions falls upon it as well.

It is clear that Robinson was not an employee of the United States.  However, Plaintiff moves the Court to sever Robinson from the action, ostensibly leaving viable claims against a named party other than Robinson.  D.E. 16.  Based on the record, the Court concludes that Plaintiff's motion is moot because neither Robinson or Carroll are named parties to the action and Plaintiff has failed to establish any subject matter jurisdiction for claims against either.

Both Plaintiff's complaint and amended complaint name only the United States as Defendant in the caption.  *See* D.E. 1, 20.  In paragraph one of each version of his complaint, Plaintiff asserts that he is bringing the action against the United States pursuant to the FTCA.  *Id.*

Further, paragraph 3 states that "Plaintiff also brings this action against defendants, Robinson, P. OD, (Robinson) and Carrol, Marguarite, RN, (Carrol), physicians acting as the agents, servants, and employees of Defendant, the United States of America, in the course of their employment, who along with other agents, servants, and employees of Defendant, the United States of America, known to defendant, the United States of America, but unknown to Plaintiff, committed the acts of negligence that are set forth more fully below." *Id.* It is clear from the record that only the United States was served with a summons. *See* D.E. 11 (Returned Summons Served on United States by United States Marshal Service). However, Plaintiff, at least implicitly, has indicated that he believes Carroll and Robinson to be parties before the Court.

First, Robinson and Carroll are not named Defendants in the action. Pleadings filed by pro se plaintiffs are "to be liberally construed" and should be "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Regardless, pro se plaintiffs must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Federal Rule of Civil Procedure 10(a) requires that "[t]he title of the complaint must name all the parties[.]" Fed. R. Civ. P. 10(a). Moreover, "[c]ourts have concluded that 'a party that is not named in the caption of an amended complaint is not a party to the action.'" *Bakari v. May*, No. 3:10-cv-250, 2011 WL 1743728, *1 n.1 (S.D. Ohio May 6, 2011) (quoting *Jones v. Parmley*, No. 5:98-CV-374 FJS/GHL, 2005 WL 928666, *1 (N.D. N.Y. April 20, 2005)).

It is clear that Robinson and Carroll are not parties named in the caption of either Plaintiff's complaint (D.E. 1) or amended complaint (D.E. 20). Therefore, Plaintiff has failed to comply with Rule 10. Moreover, Plaintiff has failed to comply with the requirements of Federal Rule of Civil Procedure 4. Rule 4 requires that a summons be served on named defendants

10

within 90 days after the complaint is filed.  *See* Fed. R. Civ. P. 4.  The District Court ordered that only the United States be served by the United States Marshals pursuant to Rule 4.  *See* D.E. 6; Fed. R. Civ. P. 4(c)(3).  Plaintiff was aware that neither Robinson nor Carroll was served pursuant to the court's order, yet he has made no attempt to effect or request service upon them. If Defendant meant, from the outset of the case for Robinson or Carroll to be named Defendants, he should have attempted to either effectuate service himself or request the court to do so on his behalf.

Furthermore, even if the Court were to conclude that Robinson and Carroll were named parties in the action, Plaintiff has not provided any argument to establish that the Court would have jurisdiction over any claim he could have against them as individual Defendants.  It is clear that Plaintiff is proceeding, in both complaints, under the FTCA.  However, any claim against Robinson and Carroll would, presumably, be a state common law medical negligence claim. Federal district courts are courts of limited jurisdiction, and their powers are enumerated in Article III of the Constitution.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Hudson v. Coleman*, 347 F.3d 138, 141 (6th Cir. 2003) ("[I]t is well established that federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute[.]").  The party seeking to invoke the court's jurisdiction has the burden of establishing it.  *Kokkonen*, 511 U.S. at 377.  Plaintiff has not provided any basis to invoke the subject matter jurisdiction of this Court regarding any independent state law claims against Robinson and Carroll.  Thus, he has failed to meet his burden to establish it.

Therefore, Plaintiff's motion to sever Robinson is moot, as Robinson or Carroll are not named parties to the action.  Moreover, this court lacks subject matter jurisdiction, under the FTCA, to hear Plaintiff's claims against the United States that stem from the actions of Robinson

because of Robinson's status as an independent contractor.  Therefore, these claims should be dismissed, and thus, the only claim Plaintiff has remaining against the United States is that stemming from the actions of Carroll.  *See Moser v. United States*, No. 1:02-CV-302, 2006 WL 1476202, *6 (W.D. Ohio May 25, 2006).  However, that claim is flawed as well.

*C.  Defendant's Motion to Dismiss Under Rule 12(b)(6) and Motion for Summary Judgment*

Federal Rule of Civil Procedure 12(b)(6) provides for a defendant to move for dismissal for a plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In determining whether a complaint fails to state a claim, the Court may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint, and matters of which the Court may take judicial notice.  *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  To show that he is entitled to relief, the plaintiff's factual allegations "'must be enough to raise a right to relief above the speculative level' and to 'state a claim to relief that is plausible on its face.'"  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  Naked assertions devoid of "further factual enhancement" are insufficient to state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In analyzing the claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept all the plaintiff's allegations as true.  *Keys*, 684 F.3d at 608.

Rule 12 further provides that:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).  Thus, the plain language of the rule requires that if the Rule 12(b)(6) motion has attachments which the Court considers, such as the declarations herein, then the

motion "shall" be converted into a motion for summary judgment pursuant to Rule 56.  *See Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993).   In this case, because the Court has, indeed, considered the content of the several declarations and other exhibits submitted by Defendant, the Court converts the motion to one for the alternative relief sought, summary judgment.  *See Soper v. Hoben*, 195 F.3d 845, 850 (6th Cir. 1999).  Moreover, Plaintiff has been afforded the full opportunity to respond to the United States motion and has done so.  He has even moved for summary judgment on his own.  Thus, the Court must consider the standards under Rule 56.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  The Court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  Additionally, the Court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The burden of establishing the absence of a genuine dispute initially rests with the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact.").  If the moving party meets its burden, the nonmoving party must then "go beyond the pleadings" and produce "specific facts" showing a genuine dispute for trial.  *Id.* at 324.  In cases, as here, where the defendant is

the moving party, "the plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor.  If he does so, there is a genuine issue of fact that requires a trial."  *Anderson*, 477 U.S. at 257.

A fact is "material" if the underlying substantive law identifies the fact as an essential element.  *Id.* at 248.  Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment;  factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  A "genuine" dispute exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" (citation omitted)).  With all these standards in mind, the Court turns its attention to the case at hand.

Defendant argues that it is entitled to summary judgment for two reasons: first, Defendant asserts that Plaintiff is unable to satisfy the elements of a medical negligence claim under Kentucky law.  D.E. 14 at 10.  Plaintiff, in his cross-motion for summary judgment, agrees that summary judgment is appropriate, but asserts that he has met his burden to establish medical negligence and thus is entitled to summary judgment in his favor.  D.E. 17.

Plaintiff alleges that the employees of the United States "were negligent in the care provided."  *Id.* at 5.  As noted above, Kentucky tort law applies to this claim.  *See Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995).  The Kentucky Court of Appeals has established the elements of a cause of action for medical malpractice in Kentucky:

> To establish a prima facie case of medical malpractice, a plaintiff must introduce evidence, in the form of expert testimony, demonstrating (1) the standard of care recognized by the medical community as applicable to the particular defendant,

(2) that the defendant departed from that standard, and (3) that the defendant's departure was a proximate cause of the plaintiff's injuries.

*Heavrin v. Jones*, No. 2002-CA-000016-MR, 2003 WL 21673958, *1 (Ky. Ct. App. July 18, 2003). Negligence is never presumed "from the mere evidence of mental pain or suffering of the patient, or from failure to cure, or poor or bad results[.]" *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. App. 2006) (quoting *Meador v. Arnold*, 94 S.W.2d 626, 631 (Ky. 1936)). Thus, "[t]o survive a motion for summary judgment in a medical malpractice case in which a medical expert is required, the plaintiff must produce expert evidence or summary judgment is proper." *Id.* (citing *Turner v. Reynolds*, 559 S.W.2d 740, 741-42 (Ky. App. 1977)). It is not required that a plaintiff in every case obtain an independent expert to review the challenged conduct. *Vance By and Through Hammons v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996). "Rather, the necessary expert testimony may be supplied by the defendant's admissions during discovery, or through medical evidence obtained from other treating physicians." *Id.* (citing *Perkins v. Hausladen*, 828 S.W.2d 652, 655-56 (Ky. 1992)).

Here, Plaintiff does not dispute that he has failed to provide evidence from an independent expert to establish a prima facie case of medical malpractice under Kentucky law. However, he argues that such evidence is not needed for two reasons. First, he asserts that "expert testimony has been actually submitted in the form of Robinson's 2/10/2015 notes." D.E. 17 at 7 (citing D.E. 14-4 at 8-11). Plaintiff argues that a defendant-doctor qualifies as an expert in his field of practice, and thus, the medical record of his interaction with Robinson from February 10 is enough to satisfy his requirement to present expert testimony. *Id.* at 7-10.

A review of the record, however, reveals that the medical records submitted with Defendant's motion do not adequately provide evidence of the applicable standard of care, whether Robinson and Carrol departed from that standard, or whether Plaintiff's injuries were

caused by this departure.  The crux of Plaintiff's negligence claim is that Robinson prescribed him Gentamicin Ophthalmic Solution, to which Plaintiff had an allergic reaction.  Moreover, Plaintiff alleges that Robinson and Carroll were negligent because they failed to adequately treat his reaction.  Neither of these claims is sufficiently supported by the medical records.

Plaintiff is correct that Robinson's February 10 notes indicate that Plaintiff was having an allergic reaction to the Gentamicin.  D.E. 14-2 at 10.  However, this does not establish the duty of care that was owed by Robinson when assessing Plaintiff for allergies.  Moreover, the notes do not assert any opinion as to whether Robinson breached any duty of care by prescribing a medication that Plaintiff was allergic to.  Thus, the notes do not help Plaintiff establish duty, breach, and causation as required by Kentucky law.

Similarly, the declarations and records attached to Defendant's motion do not meet the requirement to present expert opinion regarding his failure to provide care claim.  Plaintiff asserts that Robinson and Carroll failed to provide him with any treatment to remedy his allergic reaction and therefore he suffered injury.  Plaintiff asserts that he was not provided any medication to treat his reaction, such as Benadryl, and therefore their negligence is apparent.  However, the records provided do not contain any expert evidence to establish duty, breach, or causation with respect to this claim.

In fact, the medical records contradict Plaintiff's assertions.  Following the February 10 evaluation, Robinson directed Plaintiff to use the Prednisolone in both eyes, and he placed an order for erythromycin ophthalmic ointment.  D.E. 14-2 at 10.  In Thomas's declaration, she states that this "is a common and acceptable course of treatment for symptoms related to dermatological allergic reaction around the eyes" because "Prednisolone is safe for application around the eyes and would have reduced swelling and inflammation."  *Id.* at 3.  Moreover,

Thomas states that "removing the allergen, which in this case would be stopping use of the gentamycin, is another form of treatment for a localized dermatological allergic reaction and should provide relief within a matter of days" and "further prescription intervention" was not warranted as "the reaction was localized." *Id.* She concludes that although "Plaintiff appears to have wanted some other form of treatment for his symptoms, such as prescription antihistamine cream or pills, or other prescription medications, such treatments were not medically indicated." *Id.* Therefore, without his presentation of expert evidence as to whether this was a reasonable, accepted medical treatment, the Court cannot find that Plaintiff has met his burden to provide expert testimony because the records Plaintiff relies upon to do so contradict his position.

It is also significant that none of the records that Plaintiff relies upon in support of his position indicate that he had any injuries following his February 10 evaluation by Robinson. On March 11, 2015, an evaluation performed by Carroll found that Plaintiff had "no redness, swelling, discharge, rash or discoloration noted to either eye[.]" *Id.* at 13. Moreover, the record indicates that Plaintiff "denies having any pain, itching, swelling, or discharge at the present time." *Id.* In his motion, Plaintiff argues that this record is contradictory because, in the same record, Carroll lists under "Complaint 1" that the chief complaint was "Eyes/Vision Problems" and that the subjective assessment was "Vision problems-intermittent itching, watering, redness, irritation and bumps." *Id.* Defendant argues that the subjective complaint portion of the record simply lists information from Plaintiff's previous visit. D.E. 27 at 7.

Plaintiff has provided no support for his argument, while Defendant's position is supported by the record. Carroll's declaration confirms her observations from the March 11 record. D.E. 14-4 at 2-3. She states that "Plaintiff denied having any eye pain, itching, swelling or discharge" and that "upon examination, [she] noted that there was no redness, swelling,

17

discharge, rash or discoloration in either eye." *Id.* These facts support Defendant's position that the March 11 record is not contradictory or inaccurate. Plaintiff has provided no evidence indicating otherwise. Thus, the Court cannot find that the March 11 record provides expert evidence in support of Plaintiff's claims of negligence.

Further, in her declaration, Della Thomas states that "during a Chronic Care Clinic appointment on April 20, 2015, Plaintiff specifically denied any issues with his eyes." D.E. 14-2 at 3. This was his most recent encounter with medical services. *Id.* Therefore, none of the medical records and declarations submitted by Defendant support a finding that Plaintiff had a lasting injury as he alleges. Thus, Plaintiff has failed to present any expert evidence, as required by Kentucky law, to establish the applicable standard of care, whether Defendant breached that duty, and whether the breach was the cause of Plaintiff's injuries. Plaintiff has not met his burden.

Plaintiff argues, in the alternative, that "Kentucky law excuses the expert witness requirement in cases where negligence and causation are 'so apparent that laymen with a general knowledge would have no difficulty in recognizing' them[.]" D.E. 17 at 7 (*citing Jarboe v. Hartin*g, 397 S.W.2d 775, 778 (Ky. 1965)). Plaintiff argues that "the instant case is not complicated at all, as the medical records reflect negligence indeed occurred." *Id.* at 6. Outside of this, Plaintiff has provided little explanation for why the "layman exception" should apply. In truth, Plaintiff equates the mere existence of pain, suffering, or injury to negligence.

There are two exceptions to the expert witness rule in medical malpractice cases in Kentucky. *See Perkins v. Hausladen*, 828 S.W.2d 652, 655 (Ky. 1992). Plaintiff argues that only the so called "layman exception" should apply. This exception involves a situation "where 'any layman is competent to pass judgment and conclude from common experience that such

things do not happen if there has been proper skill and care.'" *Id.* (quoting *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 256 (Ky. 1985)).   An example of such cases would be "where the surgeon leaves a foreign object in the body or removes or injures an inappropriate part of the anatomy." *Id.*

The layman exception does not apply in this case as Plaintiff has failed to provide any authority or argument for its application to the factual basis for his claim.  Plaintiff's case is not one in which a foreign object was left in his body or where the wrong part of his body was treated.  His claim is based upon the theory that he was prescribed medication, to which he was allergic, and that he was given the wrong treatment to treat that allergic reaction.  Based on this record, the Court cannot conclude that a layperson would conclude that Robinson should not have prescribed him the Gentamicin or even be competent to make that determination.  Likewise, a layperson could not conclude whether his reaction should have been treated differently by Robinson or Carroll, including whether or not Benadryl would have been a more effective solution.  Therefore, this exception does not apply to his case.

Plaintiff cites three cases in his cross-motion for summary judgment in support of his position.  However, it is not clear whether the cases are cited in support of the argument that the layman exception should apply or the argument that the records attached to Defendant's motion are sufficient to meet his burden to provide expert evidence.  In either instance, the cases cited do not support either proposition.  *See Cash v. CNA Group Life Assurance Co.*, No. 4:03-CV-53, 2005 WL 1421015 (W.D. Mich. June 15, 2005) (ERISA claim in which original diagnosis was an allergic reaction to medicine); *Freytes v. Wal-Mart Stores East, LP*, Civil No. 10-38-GFVT, 2011 WL 2119383 (E.D. Ky. May 26, 2011) (products liability action in which court granted summary judgment in part because Plaintiff failed to provide expert evidence to assist jury in

understanding her claims);  *Morway v. MSD Consumer Care, Inc.*, No. 11-CV-13529, 2013 WL 4417530 (E.D. Mich. August 14, 2013) (products liability action dealing with allergy to chemical in shoes and finding that failure to warn presented a question of fact).  The only correlation between these cases and Plaintiff's case is that each potentially involved some form of allergic reaction.  In fact, each case, particularly *Freytes*, actually supports Defendant's position that expert testimony is needed to properly evaluate duty, breach, causation.

Accordingly, based on the analysis above, Plaintiff is required to present expert testimony to support his claim of medical malpractice.  Because he has not done so, summary judgment in favor of Defendant is appropriate with respect to claims stemming from the actions of both Carroll and Robinson.  *See Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. App. 2006) (citing *Turner v. Reynolds*, 559 S.W.2d 740, 741-42 (Ky. App. 1977) ("[t]o survive a motion for summary judgment in a medical malpractice case in which a medical expert is required, the plaintiff must produce expert evidence or summary judgment is proper.")).  Thus, Plaintiff's claims fail as a matter of law.

## III.  RECOMMENDATION

Accordingly, the Court **RECOMMENDS** that:

1.      Defendant's motion to dismiss, or in the alternative, for summary judgment (D.E. 13) be **GRANTED**;

2.      Plaintiff's cross motion for summary judgment (D.E. 17) be **DENIED**; and

3.      Plaintiff's motion to sever (D.E. 16) be **DENIED AS MOOT**.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute.  *See*

*also* Rule 72(b).  Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 21st day of March, 2016.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge